Good morning, Your Honors, and may it please the Court, Robert Stander here on behalf of the EPA. And would you move your microphone just a little closer or up a little bit? Yes, Your Honor. It helps with the transmission to Judge Gould and for us, so thank you. Thank you, I appreciate that. I would like to and plan to reserve five minutes for rebuttal this morning. The judgment below ordering EPA to regulate fluoride added to drinking water should be vacated for three reasons. First, the District Court misinterpreted the boundaries of a proceeding under Section 21 of the Toxic Substances Control Act. Second, the Court dramatically departed from the principle of party presentation. And third, the plaintiffs lack standing. Starting with the statutory question first, Section 21 authorizes any person to petition EPA to regulate a chemical substance on the ground that it poses an unreasonable risk of injury. If EPA denies the petition, then the person may obtain review of the petition in a de novo proceeding in District Court. The text, structure, and purpose of Section 21 show that it imposes an exhaustion requirement. The scientific studies the plaintiff relies on in the District Court must first have been presented in the petition to EPA. So starting with the structure, Section 21 clearly sets up a two-step framework. Starting with the petition, the petition must set forth the facts that establish the need to regulate, and then review in the District Court is limited to review of the petition. Well, Counsel, that raises the first issue. You're the party who is asking the Court to take judicial notice, correct? Yes, Your Honor. Facts that were not necessarily available to the District Court. Yes, Your Honor. If you're interested in the standing issue, I think I'd start by just noting that, you know, we shouldn't have needed to make the standing argument that we made in our briefs that are based on the second declaration of Jessica Trader because the only reason that declaration exists is that the District Court commandeered the case at the end of the first trial, overruled the express stipulation of the plaintiffs. That was a stipulation that was, you know, signed by the Court, entered on the docket during discovery. The plaintiffs never asked during the first trial to submit a new declaration, and the District Court simply overrode it and told them to submit a new declaration asserting a different theory of injury. Now, I'll get to the party presentation issue in a few minutes, but for now the point is just that after all that went on in the District Court, the plaintiff, excuse me, the Court gave the plaintiffs every avenue to establish their standing based on their declarations, and they still haven't done it here. Right, but I think part of the, I guess part of the question may be, you complain that the District Court allowed all of this evidence in, and now you're seeking new evidence in on appeal. A little contradictory? So I understand the concern here. I think we've, you know, it's clearly permissible to take judicial notice on appeal for a standing issue. We've cited the Montana Green Party case that did exactly that. And if the Court disagrees, if you disagree about judicial notice, and you think that you declined to do that and you think that standing is proper here on appeal, then we move to the merits and the statutory question, and we think and we submit that we have compelling arguments on the two issues that were presented on the merits today. Before you get there, do you lose on standing if we don't grant judicial notice? Yes, Your Honor. Okay. The standing argument is based on judicial notice that the source water in Leawood, Kansas, where Jessica Trader lives, contains fluoride, and that based on the District Court's findings, that level of fluoride, the source water in Leawood, Kansas, is ten times the level, the safe level, according to what the District Court said. So let me ask this. If we're looking at your request for judicial notice and you think it's, obviously you think it's determinative and dispositive, why wouldn't we just remand to the District Court so it could consider that in the first instance, along with all the other evidence in the case? I mean, it's a little odd for us to be now applying facts on appeal. Well, again, Your Honor, if that's what you're going to do. No, I'm just asking a question. So I think, again, I would point to the – Take a reaction, yeah. I would point, Your Honor, to the Montana Green Party case that did exactly this. It took judicial notice of election maps and election districts. It used that to establish standing. And I don't think that here the declarations that we're relying on require any fact-finding. Our point is simply this. There's no redressability. Jessica Trader's declarations say that she tries to do whatever she – I try to do whatever I reasonably can to limit my ingestion of fluoride. We know that one of those things is not drink the tap water because – instead to drink bottled water, filtered water. We know from the district court's findings and from the – we know from the judicial notice that the source water contains fluoride. And we know from the district court's findings that the background level of fluoride is ten times greater than what the safe level is. And so it doesn't require fact-finding to just read the declaration and say, I will do whatever I reasonably can to avoid ingestion of fluoride. That means I'm not going to drink the fluoride that has an unsafe level of the tap water, excuse me, that has an unsafe level of a fluoride. Usually on judicial notice we take public documents. And here we've just got a website. We don't – there's no examination of it. So you're asking us to take that at face value on judicial notice and make a standing determination on it? Again, Your Honor, so I think these are the type of public documents. A website from a public utility company stating the basic facts about its water I think are proper for judicial notice. But I'll just say it again. If the court disagrees and thinks that they're standing here, we'll just go to the merits and we submit that we have compelling arguments on both of the merits issues. So on the – We're not necessarily disagreeing. We're just asking questions.  So why don't you go to the merits? I appreciate that, Your Honor. I was speaking of the reason why Section 21 on tax structure and purpose imposes an exhaustion requirement. I think the purpose, the function of Section 21 overwhelmingly supports our interpretation. The purpose of a – the two-step process under Section 21 is to use the petition to overcome bureaucratic inertia to spur EPA to regulate. If EPA denies the petition, then the purpose of the district court proceeding is to spur EPA to regulate when EPA should have granted the petition in the first instance. In order for EPA to make an informed decision and for this process to work correctly, EPA must know the scientific studies the plaintiffs are relying on at the petition stage in order to make that informed decision on the petition. It turns Section 21 on its head to allow plaintiffs to submit one set of scientific studies to EPA and then a very, very different set of scientific studies in the district court, and that's exactly what happened here. The district court allowed the plaintiffs to submit an evolving series of scientific studies that did not even exist at the time when EPA denied the petition. And the district court realized this problem at the end of the first trial. Now, here's what the district court said when referring to what Congress intended under Section 21. Quote, I don't know if it contemplated a situation where the record before the court is very, very different and has evolved substantially differently than what was presented. That's 1ER31, and that's exactly right. Congress didn't contemplate it. The statute doesn't allow it. And plaintiffs' contrary interpretation eviscerates the two-step structure of Section 21. It renders the petition a meaningless formality. It undercuts the requirement that the petition set forth the facts that establish the need to regulate, and it leads to the nonsensical situation where the plaintiffs present one set of studies to EPA and then a very, very different set of studies in the district court. Now, plaintiffs' arguments in their brief, the vast bulk of their arguments attack a straw man about the administrative record. We're not arguing that Section 21 is limited to the administrative record like an APA case. We're just arguing that it has an exhaustion requirement. It does for the reasons that we've explained. So all of those arguments are simply beside the point. The plaintiffs also rely heavily on the word proceeding in de novo proceeding. Proceeding is a generic term that cannot bear the weight that plaintiffs put on it. Proceeding can refer to any type of proceeding, a legislative proceeding, an administrative proceeding, a judicial proceeding. The fact that it's a proceeding or a de novo proceeding doesn't tell us that there's an exhaustion requirement. And finally, all the other cases that they rely on, the other statutes that they rely on, those are readily distinguishable. None of them use the language of this statute. None of them say de novo proceeding. That language is unique in the United States Code. If Congress wanted to say trial de novo, it would have said trial de novo. It didn't. None of those statutes have the two-step structure where we have the EPA, the expert agency that at the end of the day has to regulate, and then a two-step structure where the point of this is to overcome bureaucratic inertia where the EPA is simply refusing to do its job by declining to rule on a petition where they should have. That's not at all what happened here. The EPA was very much doing its job. It's just that the evidence didn't even exist at the time the EPA denied the petition. This just — this statute isn't designed for this circumstance where the evidence doesn't yet exist, where there's evolving uncertain science that trails on for seven years after the petition is denied. The Section 21 has a 90-day requirement. EPA must rule within 90 days on a petition. So it's supposed to be a fast process. It's designed for a situation where the evidence is clear, you put it in front of the EPA, the facts establish the need to regulate, and the EPA just won't do its job. Then the district court comes in and says, you should have done this. That's not what happened here. It's not what the statute is designed for. And we ask the court to reverse on that basis. That brings us to the party presentation issue. And this just vividly illustrates the problem with the plaintiff's interpretation. This case is, in fact, is the poster child for what will happen under the plaintiff's interpretation. At the end of the first trial, the district court tried to solve the problem that had been created by ordering the plaintiffs over their express objection to file a new petition with the EPA that included all of their new scientific studies that they This just compounded the error by violating the bedrock principle of party presentation. As the Supreme Court held in Sinanang-Smith, and that's a 9-0 opinion written by Justice Ginsburg, parties represented by competent counsel know what is best for them and are responsible for advancing the facts and the argument entitling them to relief. The district court dramatically departed from this principle by refusing to rule at the close of trial on the evidence the plaintiffs had actually submitted. And it did so as to both the merits and standing. So it did three things on the merits that violated this principle. The first is just refusing to rule. It's a duty, a bedrock duty of a judge in a bench trial to rule at the end of trial rather than ordering the parties to go out, gather new evidence, and come back for a second trial on a different record of the judge's own making. Second, the court ordered the plaintiffs over their express objection to file a new petition. Here's what the plaintiffs said when the court asked them if they wanted to file a new petition. Quote, I can tell you it's not something that our clients want to do. We're not keen on submitting a new petition, to be frank. That's 4ER749. The district court overrode that. Here's what the district court said. The court will hold this case in abeyance and directs plaintiffs to file a new petition with EPA. That's 1ER26. The petition is the core of the proceeding under Section 21. It's the foundation for a court to order the plaintiffs over their clients' express objection to file a new petition that by all accounts contained a very, very different set of evidence. It fundamentally transforms the proceeding. It's a dramatic departure from party presentation. Finally, the court was still not done and wanted more evidence, wanted to wait for more evolving science. And so the court ordered the case to be held in abeyance to wait for the completion of additional scientific studies that were ongoing around the world, in Canada and in Mexico and in Spain, and for a systematic review called the NTP monograph. The plaintiffs never asked for this, all during the first trial. In fact, at the end of the trial, they objected. Here's what they said. Quote, plaintiffs maintain that they have already presented sufficient evidence to demonstrate an unreasonable risk. That's 5ER988. The district court disagreed and thought it knew best. Here's what the court said. Quote, we've got other things that I want to hear about, and I want experts to hear about. I want the latest evidence, and that's still my goal. And again, quote, the court intends to continue to hold the case in abeyance, at least until the final NTP monograph is released, and possibly until the Canadian, Mexican, and Spanish cohorts are peer reviewed. And finally, I'm going to put this case on hold until we get these results. Got to have the evidence. That is critical. These are the words of a judge that has commandeered the case, that has decided that it knows best, that the court knows best about what evidence should be presented. The plaintiffs, under our adversarial system, are responsible for advancing the facts and argument entitled to relief. They didn't ask for this. The court simply commandeered the case at the end of trial. A similar problem occurred with standing. And here it's even worse, because what the court did is overrode an express stipulation. The plaintiffs had stipulated early in the case, express, signed on the docket, that they would rely exclusively on their set of declarations to support standing. The district court overrode it. They didn't ask for it all during trial. We submit that this case is governed by Wood v. Milliard, the Supreme Court's holding in 2012, a unanimous opinion. There, the government had stipulated that it would not raise a statute of limitations defense. The Tenth Circuit sua sponte overrode that. The Supreme Court reversed it on party presentation grounds and focused on the fact that there was a stipulation as a key reason why it was problematic. All of this could have been avoided if the court had just interpreted the statute correctly to include an exhaustion requirement. And so we ask the court to reverse on both those grounds today. And I'll reserve the rest of my time for rebuttal. Thank you, counsel. Good morning, Your Honors. May it please the court, Michael Conant on behalf of the plaintiffs' appellees. And would you also raise the microphone here. Thank you. Plaintiff's standing in this case is based on three undisputed facts. First, the government policy puts a chemical in the plaintiff's drinking water, which is the challenged source of injury in this case. Second, the district court found that the chemical is put in the water at a level that poses an unreasonable risk to human health. This was a factual finding based on extensive expert testimony by leading scientists in the field that is not in dispute here by the EPA. And third, the defendant, EPA, has the authority to prohibit or restrict this challenged source of the plaintiff's injury. EPA does not challenge any of these facts on appeal. Instead, EPA seeks to create a new factual record to argue that the existence of other sources of the chemical defeats plaintiff's standing. Well, counsel, I wouldn't say they're alone in seeking a new factual record. I mean, the district court prolonged this proceeding and waited for new evidence to be presented that wasn't presented to EPA. Is that fair? Yes. The court considered post-petition science that was not available at the time the petition was filed, yes. And but there's a difference in the court below considering post-petition science and EPA asking this court to judicially notice scientific facts on appeal. And that is, there is a judicial proceeding under Section 21 that is a de novo proceeding, that contemplates the production of new evidence that will be vetted through the normal tools of litigation. Here, by contrast, we have an appellate court that is not supposed to be in the mission of fact-finding, especially on scientific matters. So I think it is a different situation for the district court to have considered new science not available at the time of the petition, where both parties get to vet that science through cross-examination and confrontation, whereas here, EPA is asking an appellate body to take judicial notice of a scientific fact. So let me reverse the question. If we grant judicial notice, do you lose on standing? No, we do not, Your Honor, which I will address. And Judge Morris had a question. Well, regardless of how the science was developed, why shouldn't it go to the EPA first to give them a chance to analyze it and make a decision on appropriate regulation? Well, I don't think the statute requires or contemplates that. I do think that, as you can see in the record below, the district court did give the EPA that opportunity following the first trial. The judge allowed EPA the opportunity to consider all of the post-petition science using the correct standard of review. EPA declined in its discretion to do that, but the judge did give the EPA that opportunity following the first trial. Now, I'd like to address further the judicial notice issue, because as counsel recognized earlier, if the court does not take judicial notice, then there is no standing issue here. EPA's request for judicial notice asks that the court, on appeal, take notice of disputed scientific facts that were never vetted below and which do not meet the requisite degree of indisputability that is required by Federal Rule of Evidence 201. What's disputed about the facts of the drinking water in the Kansas utility? First, it's disputed that it's natural, which EPA has already recognized that it's not. Where have they recognized that? In their reply in support of the motion for judicial notice, EPA recognized that the background level, contrary to their motion, may not be all natural. EPA dismissed that as a semantic quibble, but that was the language that the EPA asked this Court to endorse under judicial notice. But I want to be clear about something. It is not appellee's burden to prove that these poorly understood, poorly documented, alleged facts from a website from Kansas about the natural fluoride levels in Miss Trader's water are wrong. That's not plaintiff's burden. Instead, it is EPA's burden to show that these facts are not in dispute. And the EPA has not met that burden. EPA asked this Court to take judicial notice of the purported naturally occurring fluoride level measured in an unknown combination of source water at unknown points in time using an unknown methodology by an entity we know virtually nothing about. And one of the reasons this is, I think, important, that EPA has not met its burden under Federal Rule of Evidence 201 is because the plaintiffs had no opportunity to confront and vet these facts in the proceedings below. This is because despite seven years of litigation, extensive fact discovery, extensive expert discovery, and two trials, EPA never once presented this information. And there's a good reason this Court disfavors judicially noticing facts that were not produced during the district court proceedings. Because failing to subject alleged facts to the normal fact-finding tools of litigation deprives the appellate body of a competent, reliable basis to determine if the facts and the source of the facts are truly beyond dispute. Counsel, I typically sit as a district court, and I can't recall an instance where I told the parties at the end of the trial, well, I'm not satisfied I have enough information. Why don't we go out and develop some more, and then I'll give you a decision later. What's the authority the Court used to hold this case in abeyance? The inherent power of a district court to control and manage the proceedings before it. Even over the objection of your side? We never formally objected, Your Honor. You didn't formally object. We never formally objected. So did counsel accurately read from the transcript about the response? We certainly expressed concerns. There's no question that plaintiffs wanted a quick decision just like EPA did. But we never formally objected to it. And I do have comments later to discuss more fully the party presentation issue. But we did not object to the Court doing that. The few cases that EPA cites to support this unusual, and I believe unprecedented, use of judicial notice on appeal for scientific facts are not, they don't carry any weight for this situation. Because the cases that EPA cites involve facts that did not require scientific expertise and which the parties in those cases did not even dispute. For example, in Green Party, the Court took judicial notice on its own accord. Neither party requested it. And standing in that case wasn't really even an issue for this particular claim. But the Court there took judicial notice of election results, which neither party disputed. And in Daniels, another case EPA cites, the Court again was the one who took judicial notice. It wasn't requested by a party. And there, the judicial notice was for the names of certain retirement account companies, which, again, neither party disputed. So another, I think, distinction with the cases that EPA cites is none of them involve the case, like here, that had gone to trial. And here we had two trials. So the EPA has not cited any authority to support, I think, an unprecedented application of judicial notice here. And as counsel recognized, were the Court to deny the request for judicial notice, the standing issue goes away. So I'll now turn, but I should say, before moving on to Section 21, that if the Court did take judicial notice, the existence of other sources of fluoride does not affect plaintiff's standing. This is particularly true where the injury, as here, is additive, meaning the higher the level of exposure, the greater the risk of harm. The Ninth Circuit made clear in Barnum, as well as in Ocean Advocates, and most recently in Matsumoto, these are cases cited in the NRDC's amicus brief, that the defendant does not need to be the sole cause of the plaintiff's injury. The relevant inquiry, says Barnum, is whether the requested relief would address the challenge source of injury. Barnum makes further clear that the plaintiff need not eliminate any other source of injury. More recently in Matsumoto, 122 F. 4th. 787, this Court explained that one small incremental step to reduce plaintiff's injury to some extent is enough for redressability, which aligns well with the Supreme Court's decision in Diamond Alternative. Here, the challenge source of injury is water fluoridation, and the requested relief would eliminate or restrict it. It does not matter that other sources of fluoride exposure remain, as Article III does not demand eliminating all sources of exposure in one fell swoop. And to be clear, this is not a situation, as in Bellin, where the defendant is a mere de minimis source of exposure. Indeed, the district court here found that fluoridation is a highly consequential source of fluoride exposure. So this case is not Bellin. There are other problems with EPA's standing argument, but in the interest of time, I'll move on to Section 21, unless Your Honors have questions on that. Go ahead. In its appeal, EPA advances a policy critique, I think disguised as statutory interpretation with respect to Section 21. The plain meaning of de novo proceeding is as clear as it is broad. I think the briefing is relatively straightforward on this, but I do want to respond to something counsel mentioned earlier, where I think counsel was conflating de novo, the scope, the standard of review with the scope of review. The standard of review is, do you give deference to the EPA's judgment? Clearly, both sides agree that there's no deference to be afforded to EPA. That's the standard of review. But de novo proceeding is not limited to the standard of review. It includes the scope of review. And if EPA's interpretation, like, I think one of the ways we know it's not right is that it would result in the scope of review under Section 21 being more narrow than the scope of review under Section 19. Section 19 is a situation where you have a robust administrative record, because the rule has undergone notice and comment, right? But even there in Section 19, Congress allowed a petitioner to introduce additional evidence beyond the administrative record, if it was material and there was a reasonable excuse to not have included it down below. So EPA's position here is that Section 21, the district court, is limited exclusively to the administrative record, and here in Section 21, you have a threadbare record without a notice of or notice and comment process. So I think it's an untenable interpretation to have Section 21's judicial review be more narrow than that under Section 19. I'd like to turn now, because I have... Counsel, if that's the case, why not just eliminate the administrative proceeding and allow a party to file directly in district court? Because I think Congress wanted to give EPA the opportunity to take initial action. Congress wanted EPA the first choice to do that. And I think that's the judgment Congress made. And then to ensure that this is a process that's meaningful, Congress granted petitioners the right to a de novo proceeding to challenge a denial or lack of action by EPA, and that would include a de novo scope of review. I'd like to comment just briefly on the legislative history. I may be running... Is there any other administrative proceeding where we tell the agency, take a crack at it, and we're going to give de novo review at the district court level? Not just review of what was presented, but what you can present or should have been presented. There's no question, Your Honor, that this was, as one court described, a remarkably robust procedure that Congress afforded petitioners. There's no question about that. This is an unusual statute in that Congress really wanted to ensure a robust citizen enforcement mechanism. And back in the 1970s, there was another statute, I believe the Consumer Protection Safety, some consumer statute which used similar language. But it's true that Congress has not seen fit to include this provision in other statutes. It is unique and it is robust. Briefly on the legislative history, EPA, Your Honor, was wrong in its reply brief, in its discussion of that. And I'll just quickly mention a few points. First, EPA asserts that the Senate report's discussion of an evidence-gathering procedure was a relic of certain language in the Senate bill. But this is belied by the fact that the House bill, which did not have the language that EPA cites, was described by House members as providing the same open-ended evidence-gathering process, including, quote, de novo trials. That's what one House member called that bill, as providing de novo trials. So clearly the Senate report's discussion of an evidence-gathering process was not based on the deleted clause that EPA claims. Second, EPA's argument that the addition of the words such petition into the final bill limited the scope of the de novo proceeding is not supported by the conference report, which is a thorough report and explains in detail the actual reasons for the changes to the bill, reasons that have nothing to do with EPA's theory of the legislative history. I'll now turn to party presentation. This is a principle concerned with sua sponte decisions by a court, because by definition, if an issue or motion is presented by the parties, the party presentation doctrine is not implicated. Here, when stripped of some of its rhetoric, EPA's party presentation argument is based on one decision that the district court made, the court's sua sponte decision to enter a stay following the first phase of trial. According to EPA, the district court was hidebound to rule on the evidence that the decision brought inherent power to manage the course of proceedings, and a district court need not resolve a dispute in a way that the parties proposed or preferred. Here, as discussed, the parties did prefer a quick decision, but the trial judge, who was the one with the responsibility to actually make the decision, was careful in how he approached this novel litigation and took his job as trier of fact very seriously. In keeping with this cautious approach, the trial judge wanted to give EPA an opportunity to consider the postpetition science through a supplemental petition process using the correct standard of review, and if that did not resolve the controversy, the judge wanted to make sure his ultimate decision would be informed by pending new studies that the parties themselves identified during the trial. This is not a case, Your Honors, where the trial judge was doing his own research on the side and finding studies that neither party presented. This is a case where the judge heard argument and testimony at trial about important new studies on the horizon which could shed important light on the very issue that the judge was tasked with deciding. Can you cite any other case or similar case where a court left open the record, we're going to hold this in abeyance until I get more information? I'm just grasping for similar situations. Well, this, you know, this is a novel case, Your Honor. This is the first time there's ever been a trial under Section 21, and this was obviously a complex, various complex issues, and the court was faced with navigating some complex terrain. I think it was within the court's inherent authority to ensure that the decision reach was ultimately correct to consider the evidence that the parties had identified. So this is a situation where the court wasn't raising some new legal issue that the parties hadn't identified. The only question is, does fluoridation present an unreasonable risk? The judge wanted to correctly decide that question, and to do so, the judge wanted to consider the new studies that the parties, including EPA, had identified at trial. So this was evidence presented and identified by the parties to address a legal issue raised by the parties. And I would, Your Honor, I do believe that probably the most analogous case to this situation, and granted every case is unique, but the case of Fisher v. United States, which is a California appeals court case from January of 2023, where the both, and I won't go, just to flag that, I think that case is instructive, obviously not, not very, you know, exactly what we have here. But in summary, Your Honor, the stay was a procedural mechanism that the court used to facilitate a more informed consideration of the research that the parties had identified in order to resolve the legal issues that the parties had presented. Finding a party presentation violation under these facts would invite a torrent of litigation from those who, like EPA here, perceive unfavorable rulings as proof of bias and whose arguments amount to little more than sour grapes. The court should affirm. Thank you. Thank you, counsel. We hear a rebuttal. Just a few quick points. Let me interrupt you, counsel. Do you agree with opposing counsel's representation that the parties raised these studies themselves and agreed that these studies were relevant at the first trial? I disagree that the parties, so the plaintiffs never asked to introduce these studies. They never asked for an abeyance at the end of the first trial. They didn't ask for any of this. Now, were these studies discussed during trial as ongoing studies? I believe so. Yes, I don't disagree with that. But the plaintiffs never asked, please let us introduce these studies or let's wait. So that was the status of that. The on-the-party presentation issue, I don't know what it means, the difference between a formal objection and informal objection when the plaintiffs are saying, I can tell you it's not something that our clients want to do to the court on the record. That sure seems like a... It wasn't something your client wanted to do. None of us wanted to do this, Your Honor. But on the other hand, I can understand, you know, we've got a pretty careful district judge who is unsatisfied with the state of the record and invites the parties to take it back to the agency. And nobody wanted to do that. That's correct, Your Honor. I think the district court did two things that pointed in opposite directions. You're saying they didn't exhaust. And then he says, well, all right, I'll give you the opportunity to exhaust. And you say, no, thank you. It's fair enough, Your Honor. The other part of this, though, went in the opposite direction. He said exhaust this, but then let's go wait for new studies that haven't even been done yet that will never be submitted to the EPA. And those were the studies. The second trial, the basis for the findings of fact are those new studies that were still never, still have never been presented to the EPA in a petition. So it just, in whichever direction you look, it was a problem. I've never seen anything like a case like this where a judge just refuses to rule at the end of the trial. Well, actually, it happens on some monitoring cases that are ongoing preliminary injunctions involving incarceration and so forth, or monitoring desegregation, that sort of thing. And, Your Honor, I do not think that this ---- This is different. I grant you.  But I'm just saying it's not unprecedented. I appreciate that. I would just say that this statute doesn't set up that kind of process. This statute sets up a two-step process with the petition first, and that's it. There's no statutory mechanism for going back with a new petition to EPA, and that was another issue with what the district court did, is there was no way to do this. And so it just sort of had to force this in there over parties' objections. So, you know, because this case is such an outlier, I would just refer to the three Supreme Court cases we've cited, Sinning Smith, Wood v. Milliard, and Clark v. Sweeney, and the Ninth Circuit's decision in Trader Joe's, all reversing on party presentation grounds. On Section 21. Counsel, Judge Gould, I have a question for you. If we were, if the court decided that the district court violated the party presentation principle under Sinning Smith, could we just vacate and remand to the district court to decide the case in accord with the record at the end of the first trial? Or would something else be needed? Thank you, Judge Gould. Yes, Your Honor. In fact, that's exactly the remedy that we would ask for here, is to remand, vacate and remand to the district court with instructions to do just that, to rule on the basis of the record as it existed at the end of the first trial. And then we would add excluding the scientific studies that the plaintiffs didn't present to the EPA in their initial petition. And so that is exactly what we'd ask for. We think that's appropriate on the record in this case. If there are no further questions. I have one more question. Will you respond to counsel's argument on standing that, first of all, the differences, the studies or the information you seek to expand the record was not, or was available to you at trial and you didn't bring it up? And even if we considered it, it's not relevant because we're talking about the harm caused by the addition of fluoride, not just the underlying fluoride. So, Your Honor, I think the, you know, the Leawood, Kansas information was obviously available to everyone. I think the district court's, one important piece of this is the district court's findings, which we didn't have until after trial and after the district court made its findings. When the district court held that the safe level was .04 milligrams per liter, and that's 10 times less than the .4 that's in the source water, I think that changed the situation and that is what gave us this argument to make here. So that's, I think, the answer to that. And did you raise the party presentation issue before the district court? We, Your Honor, we objected. You objected, but did you ever say this violates the party presentation principle? Your Honor, we never used what I would call the magic words, party presentation. We objected. You're saying you're brief. We objected at every step of the way, and I would just note that the parties in Sinanang Smith, the cert petition and the briefs on the merits in Sinanang Smith never used the word party presentation, and the Supreme Court reversed on that basis anyway. It's not the kind of issue that lends itself to a formal objection on party presentation grounds. What we did is object at each step of the way on the substance of what the court was doing at the time. Any further questions? Thank you for your presentation. Thank you both for your arguments. The case just argued will be submitted for decision and will be in recess for the morning. Thank you. All rise.
judges: THOMAS, GOULD, Morris